# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

| | |
|---|---|
| In Re: | |
| NICHOLE R. HERTER, | Bankruptcy Case No. 08-41160-JDP |
| Debtor. | |

---

| | |
|---|---|
| R. SAM HOPKINS | |
| Plaintiff, | |
| vs. | Adv. Proceeding No.10-8093-JDP |
| IDAHO STATE UNIVERSITY CREDIT UNION, NICHOLE R. HERTER and DAVID J. HERTER, | |
| Defendants, | |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Daniel Green and Brett Cohoon, RACINE, OLSON, NYE, BUDGE & BAILEY, CHARTERED, Pocatello, Idaho, Attorney's for Plaintiff.

MEMORANDUM OF DECISION - 1

Jed W. Manwaring, EVAN KEANE, LLP, Boise, Idaho, Attorney for
Defendants.

## Introduction

During the pendency of her Chapter 7[1] bankruptcy case, debtor

Nichole Herter ("Debtor") transferred an interest in a jointly-owned

Pocatello home (the "Property") to her ex-husband, David Herter

("Herter").  Herter, who had recently completed his own chapter 7 case,

then refinanced the existing second-position mortgage on the Property

with Idaho State University Credit Union ("ISUCU"; collectively, Herter

and ISUCU are the "Defendants"), thereby paying off the foreclosing, first-

position secured lender, and executing a new promissory note and deed of

trust in favor of ISUCU.

When he learned of Debtor's transfer and the refinancing, the

chapter 7 trustee in Debtor's case, R. Sam Hopkins ("Trustee"),

commenced this adversary proceeding.  In his complaint, Trustee sought

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 2

to avoid Debtor's transfer to Herter and to invalidate the new deed of trust

granted by Herter to ISUCU.  Defendants opposed Trustee's action, and

asserted a counterclaim to recover attorneys' fees and costs.  Defendants

also filed an application for approval of an administrative expense claim in

Debtor's bankruptcy case for the amount of the new loan.  The parties and

Court agreed to resolve Defendants' administrative expense application in

connection with this adversary proceeding.

The Court conducted a consolidated trial regarding the adversary

proceeding and application for administrative expense on October 13,

2011, after which the parties submitted closing briefs, and the Court took

all of the issues under advisement.  Having considered the record and

evidence, the parties' submissions, and applicable law, this Memorandum

constitutes the Court's findings of fact and conclusions of law.  Rules 7052,

9014.

///

///

MEMORANDUM OF DECISION - 3

## Background[2]

Herter and Debtor, as husband and wife, purchased the Property in 2002.  In doing so, they executed a deed of trust on the Property in favor of Midland Mortgage Co. ("Midland")[3] to secure a loan of $74,760.  Four years later, Herter and Debtor executed a second deed of trust against the Property in favor of ISUCU, to secure a revolving credit line of $27,500.

On October 28, 2008, in anticipation of their divorce, Herter and Debtor executed a self-drafted proposed divorce decree under the terms of which they agreed the Property would be sold, and the profits evenly split. However, after filing the proposed decree with the state court, but before

---

[2]  Defendants filed a motion for summary judgment in April 2011, and, after a hearing, the Court denied that motion  (the "June 21 Decision"). Defendants next filed what the Court viewed as a motion seeking relief from its June 21 Decision and Order.  While slightly modifying its analysis as a result of that motion, the Court again determined that summary judgment was not appropriate (the "September 2 Decision").  The background information recited above includes the facts established at trial, as well as the facts and conclusions of law established in the Court's June 21 and September 2 Decisions, as relevant to the remaining issues.  Where conclusions of law are reiterated, citations to the Court's prior decisions are included.

[3]  When executed, the deed of trust was in favor of Midland's predecessor in interest, First Horizon Home Loan Corp.  *See* June 21 Decision.

MEMORANDUM OF DECISION - 4

entry of the divorce decree, Herter filed a chapter 7 bankruptcy petition.

As a result, because it was the parties' community property, the Property

became property of Herter's bankruptcy estate.  § 541(a)(2); June 21

Decision at 16–21.  Shortly thereafter, Debtor filed her own chapter 7

petition.  Trustee was assigned to act as the case trustee in both cases.

The state court then entered its divorce decree.  Due to Herter's

active bankruptcy, however, and the resulting automatic stay, while the

decree terminated Herter and Debtor's marriage, the property provisions

of the divorce decree were void *ab initio* and of no legal effect inasmuch as

they attempted to divide the couple's property.  September 2 Decision at

10–11.

In his bankruptcy case, Herter properly claimed an Idaho

homestead exemption in the Property's value up to $100,000.  Bankr. No.

09-41117, Dkt. No. 1.  During the course of Herter's case, Defendants

approached Trustee with a proposed stipulation granting relief from the

automatic stay as to the Property in favor of ISUCU.  Trustee conducted an

equity analysis and determined that, under the circumstances existing at

MEMORANDUM OF DECISION - 5

the time, there was no equity in the Property available for Herter's

bankruptcy estate.[4]  Trustee therefore signed the proposed stipulation.

Midland also moved for relief from the automatic stay in Herter's case,

and Trustee did not object.  The Court entered orders for stay relief as to

the Property for both creditors in Herter's case.

In spite of obtaining relief from stay, neither ISUCU nor Midland

foreclosed their trust deeds on the Property during Herter's bankruptcy

case.  In addition, because of the amount of secured debt against it, Trustee

did not seek to sell the Property.  The Court entered an order discharging

Herter and closing his bankruptcy case on February 12, 2009, and the

Property was technically abandoned.  June 21 Decision at 22–24.

Because Herter's and Debtor's divorce was effective by the time

Herter's bankruptcy case closed and the Property was abandoned, and

because the now former spouses could no longer hold the Property as

community property, state law operated to fill the gap left by the voided

---

[4]  While Trustee's records for the Herter bankruptcy have since been
purged, he credibly testified that such an analysis was concluded in connection
with Herter's case.

MEMORANDUM OF DECISION - 6

divorce decree property distribution.  September 2 Decision at 11–12.

Herter and Debtor thereafter held the Property as tenants in common, each

with a one-half interest in the Property.  *Id.*  Because Herter's bankruptcy

case closed within 180-days of the date that Debtor filed her bankruptcy

petition, Debtor's interest in the Property entered her bankruptcy estate,

by operation of § 541(a)(5)(B), at that time.  *Id.*

When they approached Trustee to request that he stipulate to stay

relief for ISUCU in Herter's bankruptcy case, Defendants also approached

Trustee for similar relief as to the Property in Debtor's case.  Based on an

analysis of the Property and circumstances at the time, Trustee determined

there was no equity in the Property for Debtor's bankruptcy estate, and

signed the stipulation.  *See also* Exh. 208 (stay relief equity analysis

worksheet).  The Court, upon reviewing that stipulation, issued an Order

granting ISUCU stay relief.

Several months later, ISUCU had not enforced its rights against the

Property, and Midland filed a motion for relief from the automatic stay in

Debtor's case.  Again, Trustee conducted an equity analysis and

MEMORANDUM OF DECISION - 7

determined that, under the circumstances at the time, there was no equity in the Property for Debtor's estate. Thus, he did not object to Midland's motion for stay relief, and the Court granted that relief.

Shortly thereafter, Midland began the foreclosure process as to the Property by recording a Notice of Default on June 25, 2009. A foreclosure sale was scheduled for November 3, 2009. In response to the foreclosure sale notice, Herter engaged ISUCU, seeking to refinance the Property so he could pay off Midland's interest and retain his home. Desiring to protect its own second-priority interest in the Property against the Midland foreclosure, ISUCU agreed to the refinancing.

As part of the refinancing process, Debtor executed a quitclaim deed in favor of Herter. Exh. 104. The deed recites that "For Value Received," Debtor did "hereby convey, release, remise and forever quit claim unto David Herter, an unmarried man . . . the [Property]." *Id.* An appraisal of the Property was also ordered at that time, and estimated the Property's value to be $124,500.

With the quitclaim deed in place, Herter and ISUCU concluded the

MEMORANDUM OF DECISION - 8

refinancing transaction.  Herter received a $102,200 loan from ISUCU, used that money to pay off his debts to Midland and ISUCU.  To secure the new loan, Herter granted ISUCU a new first-position deed of trust against the Property, now in Herter's name only.

When he discovered that Debtor had quit-claimed her interest in the Property to Herter, and that Herter had executed a new deed of trust to ISUCU on the Property, Trustee initiated this adversary proceeding, seeking to avoid both of those "transfers" pursuant to § 549(a), and seeking to void the recording of the new deed of trust as a violation of the § 362(a) automatic stay.

Defendants raised a variety of defenses to Trustee's claims.  In addition, Defendants applied for approval of an administrative expense in the amount of $102,200 "in the event that Trustee prevails."  The parties and the Court agreed that ISUCU's claim for an administrative expense should be resolved in connection with the Court's decision on the issues in the adversary proceeding.

MEMORANDUM OF DECISION - 9

## Discussion

**I.     Several of Defendants' theories and arguments have already been rejected by the Court.**

Of the arguments raised by Defendants at trial, several have already been previously analyzed and addressed by the Court, including whether Debtor's estate has an interest in the Property, whether Trustee should be estopped from avoiding the post-bankruptcy transfers, and whether the interest in the Property held by Debtor's bankruptcy estate has been forfeited.

**A. <u>Debtor's bankruptcy estate had an interest in the Property</u>.**

Defendants argue that either (1) all interests in the Property were abandoned to Herter pursuant to § 554(c) when his bankruptcy case closed; or (2) the automatic stay and discharge injunction prevented the operation of state law to convert the couple's community property interests in the Property into jointly-held interests as tenants in common, and, therefore, there was no interest in the Property that could have become property of Debtor's bankruptcy estate.

MEMORANDUM OF DECISION - 10

As explained in the Court's September 2 Decision, Herter's

bankruptcy, including the technical abandonment of the Property, did not

transfer title in the Property to Herter free of Debtor's interest.  *See also In*

*re Manchester Heights Assocs.*, L.P., 165 B.R. 42, 44–45 (Bankr. W.D. Mo.

1994) (indicating that abandonment is not a means of effecting a transfer of

title); *In re R-B-Co., Inc. of Bossier*, 59 B.R. 43, 45 (Bankr. W.D. La. 1986)

(same); *First Carolina Fin. Corp. v. Caron* (*In re Caron*), 50 B.R. 27, 31–32

(Bankr. N.D. Ga. 1984) (indicating that abandonment is not intended to

determine issues of ownership and possession of property).  When the

Property was technically abandoned via the closing of Herter's bankruptcy

case, the Property was relinquished by Herter's bankruptcy estate, but

remained subject to Debtor's ownership interest.  *See also Catalano v.*

*Comm'r of Internal Revenue*, 279 F.3d 682, 685 (9th Cir. 2002) (explaining that

abandonment is merely the relinquishment of property of the estate, and

that a debtor, upon the abandonment of property, only has that interest in

the property which he held when filing his petition); *Dewsnup v. Timm* (*In*

*re Dewsnup*), 908 F.2d 588, 591 (10th Cir. 1990) (indicating that property,

MEMORANDUM OF DECISION - 11

upon abandonment, reverts to its pre-bankruptcy status); *Newkirk v. Wasden* (*In re Bray*), 288 B.R. 305, 307 (Bankr. S.D. Ga. 2001) (same).

The Court has also twice analyzed the automatic stay's effect on the divorce decree's property provisions. *See* June 21 Decision at 21–24; September 2 Decision at 10–13. As previously determined, while the divorce decree was effective to dissolve the couple's marriage, because of the automatic stay, it could not divide their property interests. *See* §§ 362(a)(3), (b)(2)(A)(iv) (providing an exception to the automatic stay for the dissolution of marriage, but not for the division of estate property); *Griffin v. Wardrobe* (*In re Wardrobe*), 559 F.3d 932, 934 (9th Cir. 2009) (indicating that "judicial proceedings" violating the automatic stay are void). Once Herter's bankruptcy estate closed, and the Property was abandoned from his estate, however, it could no longer be community property, because no marital community existed between Herter and Debtor. *See Desfosses v. Desfosses*, 815 P.2d 1094, 1098 (Idaho Ct. App. 1991) (indicating that divorce terminates a marital community). To resolve the "limbo" in the Property's ownership created by the stay's effect on the

MEMORANDUM OF DECISION - 12

couple's divorce decree property provisions, state law operated to deem

the couple's interests in the Property at that time as tenants in common.

*See Quinlan v. Pearson*, 225 P.2d 455, 456 (Idaho 1950) (indicating that,

where, for some reason, a divorce decree does not dispose of spouses'

community property, they thereafter hold the property as tenants in

common).

Likewise, the discharge injunction existing in Herter's case did not

prevent the operation of state law to recharacterize the couple's property

interests.  That discharge injunction "operates as an injunction against

[actions] to collect, recover or offset any [discharged debt] as a personal

liability of the debtor."  § 524(a)(2).[5]  Here, there was no action to collect,

recover, or offset a discharged debt.  State law merely operated to fill the

gap left by the voided divorce decree property distribution.  The discharge

injunction did not prevent such.

---

[5] Defendants also assert that the discharge injunction of § 524(a)(3) prevents the operation of Idaho law to characterize the couple's interests in the Property.  That section of the Code, however, prevents actions to recover on a community claim from community property acquired post-petition, and does not apply here.

MEMORANDUM OF DECISION - 13

**B.** **Trustee's actions in consenting to stay relief, and the
abandonment of the Property in Herter's case, do not
estop him from fulfilling his duties as trustee in Debtor's
bankruptcy case.**

The Court analyzed Defendants' estoppel argument in its June 21

Decision.  Trustee's action, in seeking to avoid the transfer from Debtor to

Herter, and from Herter to ISUCU, pursuant to § 549, and requesting a

finding that the transfer from Herter to ISUCU was void pursuant to § 362,

is consistent with his obligations as the chapter 7 trustee in Debtor's case.

The value of the interest in the Property available to Debtor's bankruptcy

estate changed when Herter and ISUCU paid off the outstanding loans on

the Property.  Trustee, in his role as trustee in Debtor's case, has an

affirmative duty under the Code to pursue that value for the benefit of

Debtor's creditors.  *See* § 704(a)(1); *United States v. Aldrich* (*In re Rigden*), 795

F.2d 727, 730 (9th Cir. 1986) (explaining that a trustee has a duty to

maximize distribution to creditors).  Doing so is not inconsistent with his

prior approaches to the Property, when it would not have yielded a benefit

to Herter's or Debtor's estates.  As a discretionary matter, the Court

MEMORANDUM OF DECISION - 14

declines to hold that the doctrine of estoppel prevents Trustee's action

against ISUCU under these facts.[6]

### C. Debtor's statement of intent indicating her intent to surrender her interest in the Property did not operate to "forfeit" that interest.

As stated in the Court's June 21 Decision, Trustee did not forfeit

Debtor's bankruptcy estate's interest in the Property by not, *sua sponte*,

verifying whether Debtor had surrendered her interest in the Property, or

petitioning the Court to compel Debtor to surrender that interest.  *See* June

21 Decision at 35–41 (analyzing the requirements of §§ 521(a)(2) and

704(a)(3)); *In re Bayless*, 78 B.R. 506, 510 (Bankr. S.D. Ohio 1987) (indicating

that, absent a creditor requesting the trustee's involvement, a trustee may

assume a debtor has performed her stated intention).

## II.    Defendants' new arguments also lack merit.

---

[6] Of course, Defendants could have avoided all of these complications by simply seeking abandonment of the Property in Debtor's bankruptcy case before undertaking the refinancing process.  *See* § 554(b).  That they neglected or declined to do so is an important factor in the Court's weighing of the equities in this action.

MEMORANDUM OF DECISION - 15

In addition to rehashing the arguments previously rejected, Defendants submit several new contentions as a defense to Trustee's claims. They also lack merit.

### A. __Debtor's quitclaim deed was sufficient to transfer an interest in the Property__.

Defendants argue that, due to the type of instrument utilized by Debtor to transfer her interest in the Property to Herter, no "transfer" occurred that Trustee may avoid for the purposes of § 549(a). The foundation for this argument is that (1) by executing a quitclaim deed, Debtor only transferred to Herter whatever interest she may have had in the Property at the time of the purported transfer; and (2) Debtor did not have any interest in the Property at the time she executed the quitclaim deed because all of her interests in the Property were, by then, property of her bankruptcy estate. Therefore, the argument goes, there was no "disposing of or parting with" an interest in property held by Debtor, and, thus, no avoidable transfer. *See* § 101(54) (defining transfer to include, "each mode, direct or indirect, absolute or conditional, voluntary or

MEMORANDUM OF DECISION - 16

involuntary, of disposing of or parting with— (I) property; or (ii) an

interest in property").

A bankruptcy estate typically includes all of a debtor's property

interests in existence as of the date the debtor files the petition.  *See*

§ 541(a).  However, simply because a debtor's interest in property passes

to the bankruptcy estate, it does not mean the debtor can no longer go

through the mechanics of transferring estate property.[7]  *See Olson v. Parker*

(*In re Parker*), 395 B.R. 12, 19–20 & n.11 (Bankr. W.D. Mich. 2008) (avoiding

a post-petition quitclaim deed transfer, and analyzing, in general, the

concept of how a debtor can transfer property of her bankruptcy estate).  If

ISUCU's argument was correct, there would be no purpose served by

§ 549(a).  *See Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 573–74

(9th Cir. 1992) (indicating that § 549 is limited in applicability to post-

petition transfers where the *debtor* is a willing participant).  Per the

---

[7]  Indeed, despite § 541(a), in some limited circumstances, a debtor's post-bankruptcy transfers are recognized as valid by the Code.  *See* § 549(c) (providing that a trustee may not avoid a debtor-initiated post-petition real property transfer when made to a good faith purchaser for fair equivalent value without knowledge of the commencement of a bankruptcy case).

MEMORANDUM OF DECISION - 17

quitclaim deed, Debtor "convey[ed]" and "release[d]" the Property to

Herter.  Exh. 104.  As ISUCU and Herter obviously intended, the quitclaim

deed would have been sufficient under state law to transfer Debtor's

interest in the Property for the purposes of Idaho's recording statutes, and,

absent Debtor's bankruptcy filing, the transfer would have been valid.  *See*

Idaho Code §§ 55-601, 55-801; *see, e.g.*, *Bliss v. Bliss*, 898 P.2d 1081, 1085

(Idaho 1995) (indicating that a quitclaim deed is a valid conveyance of

legal title to real property under Idaho Code § 55-601).  Because of

Debtor's bankruptcy filing, however, Trustee may undo any transfers that

are found to be inappropriate under § 549(a).[8]

   **B.  <u>Trustee may avoid the transfer byDebtor to Herter
        via the quitclaim deed pursuant to §§ 549(a) and 550(a).</u>**

---

[8] Section 549(a) provides:

   (a)  Except as provided in subsection (b) or (c) of this
   section, the trustee may avoid a transfer of property
   of the estate—
      (1)  that occurs after the commencement of the
   case; and
      (2)(A)  that is authorized only under section 303(f) or
   542(c) of this title; or
         (B)  that is not authorized under this title or by the
         court.

MEMORANDUM OF DECISION - 18

Debtor-initiated transfers of estate property may be avoided where they occur post-petition and have not been authorized by the Code or the court. § 549(a). Here, Debtor's transfer of her interest in the Property occurred post-petition. Defendants, however, argue that, somehow, entry of the stay relief order in favor of ISUCU "authorized" Debtor to transfer her interest in the Property to Herter.[9] But this is incorrect. The stay relief order granted relief to ISUCU to proceed to enforce its state law rights

---

[9] Defendants argue at length in their briefs that, because relief from the automatic stay authorized a remedy in favor of ISUCU as extreme as foreclosure, it surely must also authorize a creditor to execute a refinancing agreement. Thus, they contend, the resolution of this adversary proceeding hinges on the question, "If the Trustee can NOT avoid a post-petition, post-stay termination foreclosure sale, why can he avoid a post-petition, post-stay termination refinance transfer of the same debt?" That question is answered by looking to the party engaging in the post-petition transfer conduct. While a foreclosure conducted by a creditor who has obtained stay relief is appropriate, the granting of a new deed of trust in association with a refinancing is an action taken by the party seeking the refinancing. *See Hopkins v. Suntrust Mortg., Inc.* (*In re Ellis*), 441 B.R. 656, 662–63 (Bankr. D. Idaho 2010). Where a debtor creates a new interest in property in favor of a creditor through refinancing, the transaction is not analyzed under § 362, but under § 549. *Id.* at 662. Here, of course, the party providing ISUCU with a new interest in property of Debtor's estate was Herter, and not Debtor. Regardless, in connection with Debtor's transfer to Herter, and then Herter's transfer to ISUCU, the creditor was not the party acting to control or dispose of the Property. In sum, ISUCU's stay relief was inconsequential as to whether Debtor could transfer property to Herter in this context.

MEMORANDUM OF DECISION - 19

under its deed of trust; the order did not authorize Debtor to make a

transfer to Herter.  *See* Bankr. No. 08-41160, Dkt. No. 22.

Where a trustee avoids a post-petition transfer pursuant to § 549,

§ 550(a) allows the trustee to recover the transferred property, or its value,

from either the initial transferee or any successive transferee for the benefit

of the bankruptcy estate.[10]  Trustee requests that, via his avoidance claim,

Debtor's estate receive either her interest in the Property free and clear of

ISUCU's lien, or that a money judgment be entered against Defendants in

the amount of the value of Debtor's interest in the Property.  However,

where the record lacks evidence of a transferred property's market value,

or where there is conflicting evidence on that value, the return of the

_____

[10]  Section 550(a) provides:

> Except as otherwise provided in this section, to the
> extent that a transfer is avoided under section . . .
> 549 . . . of this title, the trustee may recover, for the
> benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property from—
>     (1)  the initial transferee of such transfer or the
> entity for whose benefit such transfer was made; or
>     (2)  any immediate or mediate transferee of such
> initial transferee.

MEMORANDUM OF DECISION - 20

property transferred, rather than an award of its value, is the appropriate

remedy in an avoidance action.  *USAA Fed. Sav. Bank v. Thacker* (*In re*

*Taylor*), 599 F.3d 880, 891 (9th Cir. 2010) (quoting *Rodriguez v.*

*Daimlerchrysler Fin. Servs. Ams. LLC* (*In re Bremer*), 408 B.R. 355, 360 (10th

Cir. BAP 2009)).

Here, there was little evidence provided as to the Property's value

when the Debtor-Herter quitclaim deed was executed.  While a residential

appraisal was conducted in association with the refinancing process, the

reliability of that appraisal was persuasively challenged at trial.  The Court

therefore finds that, in this case, the more appropriate § 550(a) remedy is to

order the return of Debtor's interest in the Property to her bankruptcy

estate.

Moreover, under the Code, Trustee may recover Debtor's

transferred interest in the Property from either Herter or ISUCU.  § 550(a).

Section 550(a) is designed to place a bankruptcy estate in the financial

condition it would have been in had the avoided transfer not occurred.  *In*

*re Taylor*, 599 F.3d at 890.  Thus, here, Trustee may recover Debtor's

MEMORANDUM OF DECISION - 21

interest in the Property free of the new ISUCU deed of trust against the

Property.

### C. **Herter is not entitled to subrogation and contribution as against Debtor**.

Defendants also argue that, if Herter and Debtor owned the

Property as tenants in common, Herter is entitled to the equitable

remedies of subrogation and contribution in exchange for his payment of

Midland's lien against the Property.

Defendants first raised this argument in their post-trial brief; they

did not assert such rights as a counterclaim, and did not previously assert

subrogation or contribution as a defense. As a result, Trustee had no

opportunity to discover facts related to the argument, could not address it

at trial, and had little time to develop his own legal theories to address the

issue in his reply brief. The Court declines to countenance such tactics,

and will not consider Defendants' subrogation and contribution

arguments. *See Depue v. Cox* (*In re Cox*), 2011 WL 5509205 at *8 n.21 (Bankr.

D. Idaho Nov. 10, 2011) (refusing to consider a theory of equitable

MEMORANDUM OF DECISION - 22

subrogation raised for the first time by plaintiffs in their final reply brief

because it would not be equitable and justice would not be served).[11]

### III.    Defendants are not entitled to an administrative claim in the amount of $102,200.

Finally, Defendants have applied for a $102,200 administrative

expense in Debtor's bankruptcy case "in the event that Trustee prevails."

Administrative expenses are provided for in § 503(b), which is to be

strictly construed.  *Gull Indus., Inc. v. John Mitchell, Inc.* (*In re Hanna*), 168

B.R. 386, 388 (9th Cir. BAP 1994).  The party asserting entitlement to

administrative expenses must prove their right to such expenses by a

preponderance of the evidence.  *Id.*

Administrative expenses are allowed in a bankruptcy case when a

---

[11]  Even if the argument was timely, Defendants would face an uphill battle in arguing that, via a refinance to save the Property after it had been conveyed to Herter by Debtor, the equities somehow favor them against Debtor's bankruptcy trustee.  *See, e.g., In re A.D.S.T., Inc.*, 169 B.R. 64, 66 (Bankr. D. Idaho 1994) (finding that, to be successful on a subrogation claim, the debt paid by the subrogee must not be one for which he was primarily liable).  Defendants acted out of self-interest.  As noted previously, at bottom, this litigation is a consequence of their failure to act prudently in determining, and resolving, the interests of Debtor's bankruptcy estate before pressing on with the new loan transaction.

MEMORANDUM OF DECISION - 23

claim "(1) is incurred postpetition, (2) directly and substantially benefits the estate, and (3) is an actual and necessary expense." *Id.* In addition, the claim for an administrative expense must have arisen from a transaction with the trustee. *See Abercrombie v. Hayden Corp.* (*In re Abercrombie*), 139 F.3d 755, 757 (9th Cir. 1998) (citing *Microsoft Corp. v. DAK Indus., Inc.* (*In re DAK Indus., Inc.*)., 66 F.3d 1091, 1094 (9th Cir. 1995)); *In re Cent. Idaho Forest Prods.*, 317 B.R. 150, 155 (Bankr. D. Idaho 2004); *Malden Mills Indus., Inc. v. Maroun* (*In re Malden Mills Indus., Inc.*), 303 B.R. 688, 706–07 (1st Cir. BAP 2004). If preservation of an asset confers only an incidental benefit to the bankruptcy estate, administrative expense status is not appropriate. *In re Cent. Idaho Forest Prods.*, 317 B.R. at 154 ("[T]he fact that a benefit was conferred on or received by the estate does not alone or automatically justify allowance of an administrative expense."); *In re Coolex, Inc.*, 96.1 I.B.C.R. 35, 37 (Bankr. D. Idaho 1996).

Defendants insist they should be entitled to an administrative expense because, via the refinance, Herter saved the property from foreclosure by Midland, and opened the door for Trustee to recover the

MEMORANDUM OF DECISION - 24

Property for the benefit of the estate.  But here there was no transaction

with Trustee or the estate, and any benefit to the estate would be

incidental to the benefit Defendants derived through the refinancing

process.  Indeed in pursuing the refinance transaction, both Herter and

ISUCU sought to protect their respective interests in the Property from loss

through a foreclosure.  Clearly, by acting in their self-interest, Defendants

are not entitled to allowance of an administrative expense in Debtor's

bankruptcy case.

## Conclusion

Trustee may avoid the post-petition transfer represented by the

quitclaim deed from Debtor to Herter pursuant to § 549(a), and, under

§ 550(a), may recover, for the benefit of Debtor's estate, Debtor's

undivided one-half interest in the Property free of any lien created by the

deed of trust Herter thereafter granted to ISUCU.  Defendants are not

entitled to an administrative expense in Debtor's bankruptcy case.

Counsel for Plaintiff shall submit an appropriate form of judgment

for entry by the Court.  Counsel for Defendants shall approve the form of

MEMORANDUM OF DECISION - 25

the judgment.

Dated:  December 15, 2011

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 26